**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH H. LEWIS, JR.,<br>100 Appoquinimink Ct.<br>Middletown, DE 19709, | : | |
| | : | |
| | : | |
| | : | |
| Plaintiff/Employee, | : | C.A. NO: _____ |
| | : | |
| v. | : | |
| | : | ***JURY TRIAL DEMANDED*** |
| UNIVERSITY OF PENNSYLVANIA | : | |
| 4040 Chestnut St. | : | |
| Philadelphia, PA 19104, | : | |
| | : | |
| Defendant/Employer. | : | |

## COMPLAINT

Plaintiff, Joseph H. Lewis, Jr., by and through his undersigned counsel, files the within Complaint WITH DEMAND FOR JURY TRIAL and avers as follows:

## I.    PARTIES, JURISDICTION & VENUE

1.    Plaintiff/Employee, Joseph H. Lewis, Jr., is an adult male individual domiciled at  100 Appoquinimink Ct., Middletown, DE 19709.  Plaintiff is an African American who has been medically diagnosed with *pseudofolliculitis barbae* ("PFB"), a condition that disproportionately affects black men.  This condition causes Plaintiff to suffer a painful rash when clean shaven.  When Plaintiff shaves cleanly, it creates open skin that increases the risk of infection when confronting the public while policing.  However, Plaintiff is fully qualified and able to perform his duties as a sworn police officer if allowed to maintain facial hair of ¼" or less.

2.      Defendant/Employer University of Pennsylvania is a private university with its principal place of business in Philadelphia, Pennsylvania.  Plaintiff worked for Defendant out of the University of Pennsylvania police station at 4040 Chestnut St., Philadelphia, PA 19104.

3.      Defendant employs more than 15 full time employees.

4.      Defendant employs more than 500 full time employees.

5.      Plaintiff timely filed two Verified Charges of Discrimination, EEOC Charge Nos.: 530-2016-01338 (filed February 11, 2016); and  530-2016-04013 (filed July 28, 2016) (collectively, the "Charges").  The EEOC had jurisdiction over the Charges under Title VII of the Civil Rights Act of 1964 ("Title VII"); the Americans with Disabilities Act ("ADA"); and the Family and Medical Leave Act ("FMLA").

6.      Plaintiff timely cross-filed with the Pennsylvania Human Relations Commission ("PHRC") and Philadelphia Commission on Human Relations ("PHCR").  The PHRC had jurisdiction over the cross-filed claims brought under the Pennsylvania Human Relations Act, Pa. Stat. Ann. tit. 43, § 951 et seq. (the "PHRA").  The PCHR has jurisdiction over the cross-filed claims brought under the Philadelphia Fair Practices Ordinance ("PFPO"), Philadelphia Code, Ch. 9-1100.

7.      The Charges were each filed within 180 days of the acts, pattern and practices giving rise to the Charges and pled in detail herein.  In addition, the Charges were each filed within 300 days of the acts, pattern and practices giving rise to the Charges and pled in detail herein.  In the alternative, Charge 530-2016-04013 relates back to Charge 530-2016-01338.

2

8.      On October 3, 2016, the EEOC issued Notices of Right To Sue (Issued Upon Request) for the Charges.  This action is timely brought within ninety (90) days of receipt of these Notices.

9.      Venue is appropriate in the this Court because Defendant's place of business where Plaintiff was employed is located in Philadelphia, Pennsylvania; and the acts and omissions that give rise to this cause of action occurred in Philadelphia, Pennsylvania.

10.     At all relevant times, Defendant is an "employer" as defined in and/or within the meaning of all relevant laws, including Title VII, ADA PHRA, and PFPO.

11.     At all relevant times, Plaintiff was an eligible employee as defined in and/or within the meaning of all relevant laws, including Title VII, ADA PHRA, and PFPO.

## II.      FACTUAL ALLEGATIONS

12.     Plaintiff is a decorated veteran of the United States Marines.

13.     Plaintiff is an African American male.

14.     Plaintiff was hired April 13, 2009 as a police officer at Defendant.

15.     Defendant's Chief of Police, Deputy Chiefs, and every Captain and all Lieutenants (except one African American) are Caucasian.

16.     At all times while in Defendant's employ, Plaintiff's performance as a police officer was excellent.

17.     Defendant's service records respecting Plaintiff from 2009 through 2015 show that Defendant believed Plaintiff to be an excellent police officer.

18.     In or about August 2015, Defendant informed Plaintiff that he had PFB.

19.     PFB is a skin condition that predominately affects African American men. Persons with this condition may develop exposed, raw skin; or "severe shaving bumps" if clean shaven.

20.     The EEOC, United States District Courts and United States Courts of Appeals have long recognized that a "no-beard" employment policy may discriminate against African-American men who have a predisposition to PFB unless the policy is job-related and consistent with business necessity.

21.     At all times material, there were no job-related reasons consistent with business necessity for Defendant to have a strict "no-beard" policy without exceptions for police officers.

22.     Many police departments today recognize the need to accommodate officers with PFB.  For example, the City of Philadelphia requires that the officer document the condition, subject to review every three months by the city's medical director:

> Medical Exception - A beard may be worn for health reasons when a waiver is authorized by the Safety Office based upon the advice of the City's Medical Director that the employee has a medical condition that prevents him from shaving. If a waiver is authorized, facial hair will be kept trimmed and neat, not to exceed ¼" in length. Individuals granted a waiver shall be monitored and reviewed by the Medical Director every three (3) months to determine if the medical condition persists to warrant the continuation of the waiver.

*Philadelphia Police Department Directive 6.7, effective 04/15/2011; last updated 09/11/2014.*

4

23.     Defendant has a policy that purportedly accommodates persons with PFB. However, unlike the City of Philadelphia, Defendant puts the onus on the officer to submit updated medical information every 60 days:

> Officers wearing a beard due to a medical reason **MUST** present an updated medical certificate **every sixty (60) days** to the Superintendent of Police through the chain of command. If a medical certification is authorized, facial hair will be kept trimmed and neat, (not to exceed one-quarter (¼) inch in length) and will not be styled in any manner.

*Defendant's Directive 45, Appearance Standards. (Emphasis in original).*

24.     In or about August 2015,  Plaintiff submitted the appropriate medical certification of PFB.

25.     At all times thereafter, Plaintiff kept his facial hair well kept, trim, neat, and at or less than  ¼" in length.

26.     Nevertheless, after Plaintiff received this certification, Plaintiff became subjected to harassment, a hostile work environment and retaliation.  Plaintiff's duties changed and Plaintiff was subjected to discipline for pretextual reasons.

27.     Plaintiff's supervisors and commanding officers harassed Plaintiff on several occasions.  These persons told Plaintiff that word "from the top" was that his medical waiver was disfavored by Defendant.

28.     Plaintiff was placed on shifts that required that he walk for the duration of his duties; normally Plaintiff was assigned a police car.

29.     On other occasions, while Plaintiff was on patrol with his partner, Defendant directed Plaintiff to leave his partner and walk long distances in the cold to handle traffic detail.

30.     Defendant told Plaintiff that he was required to walk because the demands of duty required this.  This statement was false.  Plaintiff learned no other officers' assignments changed at the time that he was forced to walk for his shift / for traffic detail.

31.     Plaintiff was a certified field training officer for Defendant and regularly conducted training for new police recruits.  Plaintiff was removed from the training schedule.

32.     For years, Plaintiff was regularly approved for overtime assignments and shifts.  However, Defendant denied Plaintiff overtime on a regular and recurring basis.

33.     Plaintiff sought and was denied vacation time.

34.     On one occasion, while returning from an assignment, Plaintiff discovered Defendant checking the VIN number and running the license plate on Plaintiff's personal vehicle.  Defendant also shined a flashlight through the windows in an attempt to find additional pretexts against Plaintiff.

35.     Defendant demanded that Plaintiff "shave or go home."  This demand was made to him by a sergeant acting at the direction of Plaintiff's supervisory employees.

36.     Defendant required that Plaintiff attend a disciplinary hearing for allegedly making a false statement that Plaintiff was told to "shave or go home." However, the sergeant who made this statement admitted at the disciplinary hearing that Plaintiff was so instructed.

37.     Plaintiff submitted an ADA request for accommodation for PFB, with supporting documentation.  Plaintiff's dermatologist stated that, if clean shaven, Plaintiff would have exposed skin.  Physical contact with this exposed skin would make Plaintiff prone to infection.  To avoid having exposed skin, Plaintiff could be accommodated by a waiver of Defendant's shaving requirement.   However, Defendant's EEOC director intentionally mischaracterized Plaintiff's submission as a request to be relieved from the obligation of confronting members of the public.  Plaintiff never asked for such an accommodation; only that he not be required to shave.

38.     Defendant made false statements about Plaintiff's performance and demeanor, and cited Plaintiff for alleged rules violations that were a pretext for Defendant's displeasure with Plaintiff's PFB medical waiver and in retaliation for Plaintiff's assertion of his civil rights.

39.     Defendant falsely asserted that Plaintiff destroyed evidence during a February 4, 2016 disciplinary meeting.  This allegation is absurd.  In the ordinary course of business at Defendant's police force, an interviewing officer prepares a statement of a witness and presents it to the witness to review and sign.  If the witness wishes to change the written statement, the interviewing officer makes such changes and presents the revised statement to the witness.  It is a common practice to tear the page of the original statement so that pages from previous drafts are not commingled with the final statement.

40.     The Defendant failed to mention the alleged February 4, 2016 "destruction of evidence" until February 25, 2016 because such allegations were pretextual, part of a

hostile work environment and retaliatory.  For example, approximately two weeks after the February 4, 2016 meeting, Defendant requested an extension of time to bring the charges against Plaintiff.  That request contained no reference at all to allegedly destroying evidence.  Contemporaneous to the alleged misconduct by Plaintiff, the interviewing officer made no comment and reacted in no way consistent with someone who had allegedly just destroyed evidence.  Clearly, if Defendant had actually believed that Plaintiff had obstructed in such a spectacular fashion as alleged, Defendant would have taken immediate action against Plaintiff.

41.     Plaintiff was also accused of failing to update his personal information.  In or about June 2015, Plaintiff informed Defendant that he moved to Delaware.  In an effort to find reasons to complain about Plaintiff's service, months after the notice, Defendant alleged that Plaintiff failed to update his driver's license and that Plaintiff lacked a valid driver's license.

42.     Plaintiff always had a legal and valid driver's license.

43.     The reason why Plaintiff did not change his driver's license to Delaware is that, after he stated his intention to move, he experienced marital problems.  Plaintiff remained in Pennsylvania, at the same address where his vehicle had already been registered, while his wife lived in Delaware.

44.     In addition, the address Plaintiff provided to Defendant in Delaware remained a suitable address to contact Plaintiff.  Plaintiff still in regular communication with his wife at all times.  Defendant never alleged that mail was sent from to Plaintiff's

Delaware address that Plaintiff did not receive at any time.  Plaintiff could have been contacted at the Delaware address at all times.

45.     Plaintiff and his wife had reconciled and Plaintiff changed his driver's license in a timely and legal fashion.  Plaintiff informed Defendant that he never had an expired or invalid driver's license without getting into all of the details of his personal life.  Defendant mischaracterized Plaintiff's statements as a "bizarre, misplaced" claim of First Amendment privileges.  But Plaintiff did inform Defendant that his marital problems related to the address change and driver's license issues.  The entire complaint and investigation about Plaintiff's address, the status of his driver's license and false accusations that Plaintiff lacked a valid driver's license were pretextual, contributed to the hostile work environment and were retaliatory.

46.     Shortly after the interview respecting the change of address form, Defendant accused Plaintiff of improprieties respecting a daily patrol log.  There was no good faith basis for these charges.

47.     In a notice dated February 29, 2016, Plaintiff received a notice of determination on these unfounded, pretextual charges against Plaintiff.  The result was a "written warning." However, Defendant presented Plaintiff another notice, also dated February 29, 2016, accused Plaintiff of abusing sick leave status.  The "sick abuse" allegations were another pretext created by Defendant's distaste for Plaintiff's PFB waiver.

48.     In these charges against Plaintiff respecting "sick abuse," Defendant falsely stated that Plaintiff was warned of misuse of sick leave in August 2015.

9

49.     Plaintiff never received any notice relating to sick abuse prior to February 29, 2016.  The document attached to the February 29, 2016 sick abuse notice was false.

50.     At and around the time of Defendant's complaints about Plaintiff's performance, Defendant's harassment of Plaintiff became even more severe and pervasive.  Plaintiff contemplated requesting FMLA leave because the work environment became so hostile as to be intolerable.

51.     When Defendant learned that Plaintiff was seeking FMLA leave, but before Defendant had any information about why he sought such leave, Defendant marched Plaintiff to the Chief of Police, who demanded that Plaintiff turn in his gun immediately. Plaintiff was escorted out of the work site by armed officers in front of his colleagues in a humiliating fashion.

52.     Plaintiff was actually discharged by Defendant; or in the alternative, was constructively discharged by Defendant, in violation of Plaintiff's civil and statutory rights.

53.     As a result of Defendant's conduct, Plaintiff lost his career as a police officer.

54.     Plaintiff was a decorated officer with an excellent service record who had career aspirations at Defendant's police force.   His chances of promotion and advancement have been destroyed as a result of Defendant's misconduct.

55.     Plaintiff would have to start over at or near the level of a rookie officer in order to continue his career.  For example, Plaintiff was allowed to move to Delaware and remain an officer in Defendant's employ.  However, Plaintiff cannot work as an officer in most places in the Commonwealth of Pennsylvania without being a resident in this state.

Plaintiff would be required to return to basic training and start over as a rookie officer in Delaware.

56.     Plaintiff has been forced to work in a field outside of his career as a police officer, with far less pay and benefits that he made and would have continued to make but for the unlawful conduct of Defendant.

57.     As a result of Defendant's conduct, Plaintiff suffered extreme embarrassment, humiliation, and severe emotional distress.

58.     Defendant is a private employer subject to punitive damages under the applicable laws.

59.     Defendant's conduct toward Plaintiff was outrageous, knowing, willful, wanton and/or reckless.

**COUNT I            RACIAL DISCRIMINATION**

60.     Repeats and realleges paragraphs 1-59 as if set forth at length herein.

61.     Plaintiff is a member of a protected class.

62.     Plaintiff is and was, at all times material, qualified for the position he sought to retain.

63.     Defendant's policies respecting appearance standards have a disparate impact on members of this protected class, who are more likely to suffer the condition of PFB than non-members of such protected class.

64.     As applied, Defendant's policy adversely impacted members of this protected class, including Plaintiff.

65.     In addition, or in the alternative, Defendant failed and refused to apply its policies and procedures in a non-discriminatory manner as to Plaintiff.

66.     As a result of Defendant's discriminatory conduct, Plaintiff suffered several adverse employment actions, including but not limited to:

   a) Harassment directed to him by his supervisors and at the direction of Defendant's management personnel;

   b) Changes in assignments;

   c) Denial of overtime;

   d) Denial of vacation time;

   e) Mischaracterizing Plaintiff's PFB waiver as a request to avoid contact with the public;

   f) Citing Plaintiff with rules violations that were mere pretexts for Defendant's distaste for Plaintiff's medical PFB waiver;

   g) Stripping Plaintiff of his weapon and marching Plaintiff out of his place of work in a humiliating and degrading manner;

   h) Actually discharging Plaintiff

   i) Constructively discharging Plaintiff; and

   j) Such other conduct as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

67.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, which include but are not limited to:

a) Lost wages, back pay and future wages;

b) Lost prospective earning and diminished earning capacity;

c) Lost benefits;

d) Loss of his career as a police officer, including the ability to advance through the ranks at Defendant's police department;

e) Embarrassment and humiliation;

f) Severe emotional distress; and

g) Such other damages as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

68.    In addition, Defendant's conduct toward Plaintiff was outrageous, knowing, willful, wanton and/or reckless and warrants an award of punitive damages.

WHEREFORE, Plaintiff seeks a finding against Defendant University of Pennsylvania for all equitable and monetary relief available under the applicable laws and for such other relief as may be awarded, including but not limited to: compensatory damages; punitive damages; liquidated damages; prejudgment interest; reasonable attorney's fees and costs; and all such other damages and relief available under the applicable laws.

**COUNT II          DISABILITY DISCRIMINATION**

69.    Repeats and realleges paragraphs 1-68 as if set forth at length herein.

70.    Without the reasonable accommodation of allowing a closely trimmed beard, PFB has an impact on major life activities.

13

71.     If clean shaven, Defendant would have open skin and an immune system reaction.  Defendant would also be more likely to be exposed to infection.  The manner in which Plaintiff is/would be perceived; his ability to interact with others; and the condition of his immune system are major life activities.

72.     In the alternative, Plaintiff was perceived to have a disability by virtue of his PFB condition.

73.     A reasonable accommodation for Plaintiff's disability is available.

74.     There are no job related reasons why Plaintiff should not be granted the reasonable accommodation he requested.

75.     Defendant refused to grant Plaintiff a reasonable accommodation.

76.     The conditions placed on Plaintiff for the accommodation were not reasonable.  In addition, or in the alternative, Defendant claimed to provide Plaintiff an accommodation but actually discriminated against Plaintiff for his disability.

77.     As a result of Defendant's discriminatory conduct, Plaintiff suffered several adverse employment actions, including but not limited to:

    a)  Harassment directed to him by his supervisors and at the direction of Defendant's management personnel;

    b)  Changes in assignments;

    c)  Denial of overtime;

    d)  Denial of vacation time;

    e)  Mischaracterizing Plaintiff's PFB waiver as a request to avoid contact with the public;

    f)  Citing Plaintiff with rules violations that were mere pretexts for Defendant's distaste for Plaintiff's medical PFB waiver;

    g)  Stripping Plaintiff of his weapon and marching Plaintiff out of his place of work in a humiliating and degrading manner;

    h)  Actually discharging Plaintiff

    i)  Constructively discharging Plaintiff; and

    j)  Such other conduct as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

78.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, which include but are not limited to:

    a)  Lost wages, back pay and future wages;

    b)  Lost prospective earning and diminished earning capacity;

    c)  Lost benefits;

    d)  Loss of his career as a police officer, including the ability to advance through the ranks at Defendant's police department;

    e)  Embarrassment and humiliation;

    f)  Severe emotional distress; and

    g)  Such other damages as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

79.     In addition, Defendant's conduct toward Plaintiff was outrageous, knowing, willful, wanton and/or reckless and warrants an award of punitive damages.

WHEREFORE, Plaintiff seeks a finding against Defendant University of Pennsylvania for all equitable and monetary relief available under the applicable laws and for such other relief as may be awarded, including but not limited to: compensatory damages; punitive damages; liquidated damages; prejudgment interest; reasonable attorney's fees and costs; and all such other damages and relief available under the applicable laws.

**COUNT IV          FMLA VIOLATION**

80.     Repeats and realleges paragraphs 1-79 as if set forth at length herein.

81.     Plaintiff informed Defendant that he wished to exercise his right to FMLA leave.

82.     In response, and without asking anything about the reasons why he sought such leave, Defendant demanded that Plaintiff immediately turn in his weapon and escorted him out of the building, as set forth above.

83.     This conduct caused Plaintiff severe humiliation, embarrassment and emotional distress in violation of FMLA.

84.     Plaintiff was actually discharged by Defendant for asserting his FMLA rights.  In the alternative, Plaintiff was constructively discharged.

85.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, which include but are not limited to:

a) Lost wages, back pay and future wages;

16

b) Lost prospective earning and diminished earning capacity;

c) Lost benefits;

d) Loss of his career as a police officer, including the ability to advance through the ranks at Defendant's police department;

e) Embarrassment and humiliation;

f) Severe emotional distress; and

g) Such other damages as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

86.     Defendant's conduct toward Plaintiff was outrageous, knowing, willful, wanton and/or reckless and warrants an award of punitive damages.

WHEREFORE, Plaintiff seeks a finding against Defendant University of Pennsylvania for all equitable and monetary relief available under the applicable laws and for such other relief as may be awarded, including but not limited to: compensatory damages; punitive damages; liquidated damages; prejudgment interest; reasonable attorney's fees and costs; and all such other damages and relief available under the applicable laws.

**COUNT V     HOSTILE WORK ENVIRONMENT**

87.     Repeats and realleges paragraphs 1-86 as if set forth at length herein.

88.     Defendant's conduct created a hostile work environment, in violation of Title VII and ADA.

89.     Defendant suffered intentional discrimination because of his race.

17

90.     Defendant suffered intentional discrimination because of his disability or alternatively his perceived disability.

91.     As set forth in detail above and incorporated herein by reference, and as will be established through the course of discovery, the discrimination was severe.  In addition, the discrimination was pervasive.

92.     The discrimination detrimentally affected Plaintiff.

93.     The conduct of Defendant would detrimentally affect a reasonable person in Plaintiff's circumstances.

94.     The discriminatory conduct was performed by/at the direction of persons that create *respondeat superior* liability to Defendant.

95.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, which include but are not limited to:

a)  Lost wages, back pay and future wages;

b)  Lost prospective earning and diminished earning capacity;

c)  Lost benefits;

d)  Loss of his career as a police officer, including the ability to advance through the ranks at Defendant's police department;

e)  Embarrassment and humiliation;

f)  Severe emotional distress; and

g)  Such other damages as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

18

96.     In addition, Defendant's conduct toward Plaintiff was outrageous, knowing, willful, wanton and/or reckless and warrants an award of punitive damages.

WHEREFORE, Plaintiff seeks a finding against Defendant University of Pennsylvania for all equitable and monetary relief available under the applicable laws and for such other relief as may be awarded, including but not limited to: compensatory damages; punitive damages; liquidated damages; prejudgment interest; reasonable attorney's fees and costs; and all such other damages and relief available under the applicable laws.

**COUNT VI          RETALIATION**

97.     Repeats and realleges paragraphs 1-98 as if set forth at length herein.

98.     As set forth above and incorporated herein by reference, Plaintiff's PFB waiver request, ADA accommodation request; statement of his desire to take FMLA leave, and other conduct, were protected activities under Title VII, ADA and FMLA.

99.     As a direct and proximate result of Plaintiff's protected activities, Claimaint suffered several adverse employment actions, including but not limited to:

   a)  Harassment directed to him by his supervisors and at the direction of Defendant's management personnel;

   b)  Changes in assignments;

   c)  Denial of overtime;

   d)  Denial of vacation time;

   e)  Mischaracterizing Plaintiff's PFB waiver as a request to avoid contact with the public;

f) Citing Plaintiff with rules violations that were mere pretexts for Defendant's distaste for Plaintiff's medical PFB waiver;

g) Stripping Plaintiff of his weapon and marching Plaintiff out of his place of work in a humiliating and degrading manner;

h) Actually discharging Plaintiff

i) Constructively discharging Plaintiff; and

j) Such other conduct as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

100.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, which include but are not limited to:

a) Lost wages, back pay and future wages;

b) Lost prospective earning and diminished earning capacity;

c) Lost benefits;

d) Loss of his career as a police officer, including the ability to advance through the ranks at Defendant's police department;

e) Embarrassment and humiliation;

f) Severe emotional distress; and

g) Such other damages as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

101.    In addition, Defendant's conduct toward Plaintiff was outrageous, knowing, willful, wanton and/or reckless and warrants an award of punitive damages.

WHEREFORE, Plaintiff seeks a finding against Defendant University of Pennsylvania for all equitable and monetary relief available under the applicable laws and for such other relief as may be awarded, including but not limited to: compensatory damages; punitive damages; liquidated damages; prejudgment interest; reasonable attorney's fees and costs; and all such other damages and relief available under the applicable laws.

**COUNT VII          PENNSYLVANIA HUMAN RELATIONS ACT**

102.    Repeats and realleges paragraphs 1-103 as if set forth at length herein.

103.    The foregoing violations of Title VII, ADA and FMLA also constitute violations of the PHRA.

104.    Plaintiff suffered several adverse employment actions, including but not limited to:

    a)  Harassment directed to him by his supervisors and at the direction of Defendant's management personnel;

    b)  Changes in assignments;

    c)  Denial of overtime;

    d)  Denial of vacation time;

    e)  Mischaracterizing Plaintiff's PFB waiver as a request to avoid contact with the public;

f)  Citing Plaintiff with rules violations that were mere pretexts for Defendant's distaste for Plaintiff's medical PFB waiver;

g)  Stripping Plaintiff of his weapon and marching Plaintiff out of his place of work in a humiliating and degrading manner;

h)  Actually discharging Plaintiff

i)  Constructively discharging Plaintiff; and

j)  Such other conduct as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

105.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, which include but are not limited to:

a)  Lost wages, back pay and future wages;

b)  Lost prospective earning and diminished earning capacity;

c)  Lost benefits;

d)  Loss of his career as a police officer, including the ability to advance through the ranks at Defendant's police department;

e)  Embarrassment and humiliation;

f)  Severe emotional distress; and

g)  Such other damages as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

106.  In addition, Defendant's conduct toward Plaintiff was outrageous, knowing, willful, wanton and/or reckless and warrants an award of punitive damages.

WHEREFORE, Plaintiff seeks a finding against Defendant University of Pennsylvania for all equitable and monetary relief available under the applicable laws and for such other relief as may be awarded, including but not limited to: compensatory damages; punitive damages; liquidated damages; prejudgment interest; reasonable attorney's fees and costs; and all such other damages and relief available under the applicable laws.

**COUNT VIII      PHILADELPHIA FAIR PRACTICES ORDINANCE**

107.  Repeats and realleges paragraphs 1-107 as if set forth at length herein.

108.  The foregoing violations of Title VII, ADA, FMLA and PHRA also constitute violations of PFPO.

109.  Plaintiff suffered several adverse employment actions, including but not limited to:

a)  Harassment directed to him by his supervisors and at the direction of Defendant's management personnel;

b)  Changes in assignments;

c)  Denial of overtime;

d)  Denial of vacation time;

e)  Mischaracterizing Plaintiff's PFB waiver as a request to avoid contact with the public;

f)  Citing Plaintiff with rules violations that were mere pretexts for Defendant's distaste for Plaintiff's medical PFB waiver;

g)  Stripping Plaintiff of his weapon and marching Plaintiff out of his place of work in a humiliating and degrading manner;

h)  Actually discharging Plaintiff

i)  Constructively discharging Plaintiff; and

j)  Such other conduct as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

110.   As a direct and proximate result of Defendant's conduct, Plaintiff has suffered severe injuries, which include but are not limited to:

a)  Lost wages, back pay and future wages;

b)  Lost prospective earning and diminished earning capacity;

c)  Lost benefits;

d)  Loss of his career as a police officer, including the ability to advance through the ranks at Defendant's police department;

e)  Embarrassment and humiliation;

f)  Severe emotional distress; and

g)  Such other damages as has been set forth in detail above and incorporated herein by reference and as will be established through the course of discovery.

111.    In addition, Defendant's conduct toward Plaintiff was outrageous, knowing, willful, wanton and/or reckless and warrants an award of punitive damages.

WHEREFORE, Plaintiff seeks a finding against Defendant University of Pennsylvania for all equitable and monetary relief available under the applicable laws and for such other relief as may be awarded, including but not limited to: compensatory damages; punitive damages; liquidated damages; prejudgment interest; reasonable attorney's fees and costs; and all such other damages and relief available under the applicable laws.

**TRIAL BY JURY DEMANDED**


Respectfully submitted,

CREECH & CREECH LLC


_____

TIMOTHY P. CREECH
1835 Market St., Suite 2626
Philadelphia, PA 19103
(215) 575-7618; Fax: (215) 575-7688
Timothy@AttorneyCreech.com


DATED:        November 14, 2016